873 P.2d 150

STATE of Idaho, Plaintiff–Respondent,

v.

Gary D. MAXEY, Defendant–Appellant.

No. 20812.

Supreme Court of Idaho,
Boise, February 1994 Term.

April 21, 1994.

Clark and Feeney, Lewiston, for appellant. P. Tom Clark argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, argued, for respondent.

JOHNSON, Justice.

This is a driving under the influence (DUI) case. The primary issues presented concern whether the state should have been allowed to use two prior misdemeanor DUI convictions as the basis for the felony DUI charge in this case. We conclude that the state was not precluded from relying on the two prior convictions.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In June 1990, a Lewiston police officer arrested Gary D. Maxey for DUI (the 1990 case). The state charged Maxey with felony DUI on the basis of two prior DUI convictions.

In 1987, Maxey pleaded guilty to a misdemeanor DUI (the 1987 case). In 1988, Maxey pleaded guilty to a misdemeanor DUI (the 1988 case). In 1989, Maxey was again arrested for DUI (the 1989 case). In the 1989 case, the state originally charged Maxey with felony DUI based on convictions in the 1987 and the 1988 cases. As the result of a plea agreement, Maxey resolved the 1989 case by pleading guilty to another misdemeanor DUI.

In the 1990 case, the state originally charged Maxey with felony DUI based upon his prior convictions in the 1987 case and the 1988 case. Maxey challenged the use of these convictions for enhancement purposes, and the trial court granted Maxey's motion to dismiss the 1988 conviction as an enhance-

ment. The state then dismissed the felony charge against Maxey, but later refiled, charging Maxey with felony DUI based on the convictions in the 1987 and the 1989 cases.

Maxey filed motions in limine and to dismiss challenging the use of the convictions in the 1987 and the 1989 cases as a basis for charging him with a felony in the 1990 case. Maxey asserted that in the 1987 case the guilty plea was taken in violation of Maxey's right to counsel and in violation of the state and federal constitutions and I.C.R. 11. Therefore, Maxey argued, the state may not use the 1987 conviction for enhancement purposes in the 1990 case. Maxey asserted that, in the 1989 case, the guilty plea was also taken in violation of the state and federal constitutions and I.C.R. 11, and, therefore, may not be used for enhancement purposes in the 1990 case. The trial court denied Maxey's motions.

Maxey entered a Rule 11 conditional plea of guilty, reserving the right to appeal the use of the convictions in the 1987 and 1989 cases as enhancements. The trial court withheld judgment and ordered that Maxey be placed on probation for five years. The trial court also ordered that Maxey serve nine months in jail, that he pay $1,500.00 restitution to the county, and that his driving privileges be suspended for one year. Maxey appealed to this Court the trial court's denial of his motions in limine and to dismiss and the trial court's order withholding judgment and order of probation. This Court assigned the case to the Court of Appeals, which reversed the trial court's denial of Maxey's motions in limine and to dismiss. This Court granted the state's petition for review.

## II.

### MAXEY WAIVED HIS RIGHT TO COUNSEL IN THE 1987 CASE.

■ Maxey asserts that the state may not use the 1987 conviction to charge him with a felony in the 1990 case because he did not knowingly and intelligently waive his right to counsel in the 1987 case. We disagree.

### A. MAXEY HAD THE RIGHT TO APPOINTED COUNSEL, IF HE WAS INDIGENT.

We first note that pursuant to M.C.R. 6(c) Maxey had a right to appointed counsel in the 1987 case, if he was indigent:

If the offense has a permissible penalty of imprisonment which will be considered as possible punishment by the court, or if the conviction of the offense could cause a subsequent conviction to be enhanced from a misdemeanor to a felony, then or in either of such events the defendant shall be advised that he has the right to court appointed counsel at public expense if [the defendant] is indigent. If the defendant is found by the court to be entitled to court appointed counsel, the court shall appoint such counsel unless the defendant voluntarily waives [the defendant's] right to counsel.

M.C.R. 6(c).

■ When Maxey pleaded guilty in the 1987 case, I.C. § 18–8005(3) provided that a person who pleaded guilty to or was found guilty of three or more DUI violations within five years was guilty of a felony. Because of this enhancement Maxey had a right to appointed counsel pursuant to M.C.R. 6(c), if he was indigent. Therefore, we do not address the more intricate questions concerning Maxey's right to counsel in the 1987 case under the United States Constitution and the Idaho Constitution. *Cf. Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); and *U.S. v. Lee*, 995 F.2d 887 (9th Cir.1993).

### B. MAXEY WAIVED HIS RIGHT TO APPOINTED COUNSEL.

Maxey contends that he never validly waived his right to counsel under I.C. § 19–857, which provides:

A person who has been appropriately informed of [the person's] right to counsel may waive in writing, or by other record, any right provided by this act, if the court concerned, at the time of or after waiver, finds of record that [the person] has acted with full awareness of [the person's] rights and of the consequences of a waiver and if

the waiver is otherwise according to law. The court shall consider such factors as the person's age, education, and familiarity with the English language and the complexity of the crime involved.

In distinction, I.C.R. 11(c) provides:

Before a plea of guilty is accepted, the record of the entire proceedings, including reasonable inferences drawn therefrom, must show:

(1) The voluntariness of the plea.

(2) The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.

(3) The defendant was advised that by pleading guilty the defendant would waive the right against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses against the defendant.

(4) The defendant was informed of the nature of the charge against the defendant.

(5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

If I.C. § 19–857 is substantive, it takes precedence over I.C.R. 11(c). If the statute is procedural, I.C.R. 11(c) takes precedence over it. *State v. Harbaugh,* 123 Idaho 835, 837 n. 3, 853 P.2d 580, 582 n. 3 (1993).

In *State v. Currington,* 108 Idaho 539, 540–41, 700 P.2d 942, 943–44 (1985), the Court ruled that the authority of a trial court to allow post-conviction bail to a convicted criminal made ineligible for bail by a statutory enactment is a matter of procedure rather than substantive law. *See also State v. Yoder,* 96 Idaho 651, 654, 534 P.2d 771, 774 (1975) (I.C.R. 41(c) concerning issuance of search warrants is a rule of procedure and I.C. § 19–4404 is of no further force or effect.). In its analysis in *Currington,* the Court incorporated the following statement of the distinction between substantive law and procedure:

"Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated."

108 Idaho at 541, 700 P.2d at 944 (quoting from *State v. Smith,* 84 Wash.2d 498, 527 P.2d 674, 677 (1974) (en banc)).

Applying this distinction to I.C. § 19–857 and I.C.R. 11(c), we conclude that I.C. § 19–857 is procedural and not substantive law. The subject of the statute is how a trial court will consider and rule on the waiver of the right to counsel. The statute does not create, define, or regulate any primary rights. Therefore, I.C.R. 11(c) takes precedence over I.C. § 19–857.

We reject Maxey's argument that the conviction in the 1987 case was defective because the trial court failed to comply with I.C. § 19–857 by not considering the factors mentioned in the last sentence of the statute and by not finding on the record that Maxey made a knowing or intelligent waiver of his right to counsel. The acceptance of the plea was in compliance with I.C.R. 11(c) because the record of the entire proceeding, including reasonable inferences from the record, show that the requirements of the rule were met.

At the time of Maxey's arraignment in the 1987 case, and before Maxey pleaded guilty, the trial court asked Maxey if he wished to fill out an application for a court appointed lawyer to represent him. Maxey said "no." The trial court then asked Maxey if he gave up his right to have a public defender. Maxey said "yes." The trial court accepted this as a waiver of Maxey's right to have counsel appointed.

Maxey contends that the trial court should have advised Maxey not only of his right to counsel, but also of the dangers and disadvantages of representing himself. In *State v. Clayton,* 100 Idaho 896, 606 P.2d 1000 (1980), the Court stated that, where the defendant wanted to represent himself at trial, the decision amounted to a waiver of the right to counsel, and "the defendant should be made

aware of the problems inherent in self-representation so that such waiver is knowingly and intelligently made." *Id.* at 897, 606 P.2d at 1001. *See also Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–82 (1975) (A defendant who chooses self-representation at trial should be made aware of the dangers of doing so.).

■ The dangers of self-representation at trial are obvious. The intricacies of the procedures, the rules of evidence, and the law are sufficient to justify extra care in making sure the defendant appreciates the difficulties in conducting a trial without the assistance of a lawyer. Certainly a guilty plea is an important part of a criminal proceeding. *McMann v. Richardson,* 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 772 (1970) ("to plead guilty ... frequently involves the making of difficult judgments"). We are not convinced, however, that the judgments that confront a defendant who pleads guilty in a misdemeanor case are sufficiently difficult to warrant a requirement that the trial court must advise the defendant of the problems inherent in entering a plea without counsel.

## III.

## MAXEY'S GUILTY PLEAS IN THE 1987 AND THE 1989 CASES WERE NOT ENTERED IN VIOLATION OF THE STATE OR FEDERAL CONSTITUTIONS, OR I.C.R. 11.

Maxey asserts that in the 1987 and 1989 cases he did not plead guilty knowingly, intelligently, and voluntarily, as required by the United States Constitution, the Idaho Constitution, and I.C.R. 11. We disagree.

We first note that this Court has distinguished between the requirements for accepting guilty pleas in felony cases and those in misdemeanor cases. In *State v. Carrasco,* 117 Idaho 295, 297–98, 787 P.2d 281, 283–84 (1990), the Court determined that the defendant's guilty pleas to two felonies were not entered knowingly, voluntarily, or intelligently. In *Carrasco,* the Court referred to the constitutional rights waived by a guilty plea stated in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and the

requirements of I.C.R. 11(c). 117 Idaho at 297, 787 P.2d at 283. In a footnote, the Court stated: "The requirements set forth herein apply only to accepting pleas of guilty in felony cases. The provisions of I.C. § 19–1502 and Rule 6(d) of the Misdemeanor Criminal Rules continue to be applicable in accepting guilty pleas in misdemeanor cases." 117 Idaho at 297–98 n. 1, 787 P.2d at 283–84 n. 1.

I.C. § 19–1502 provides: "If the indictment is for a felony the defendant must be personally present; but if for a misdemeanor, [the defendant] may appear upon the arraignment by counsel." M.C.R. 6(d) provides:

A defendant may also appear, answer and have judgment entered through an attorney, who shall either appear in person or shall file, at or before the time for appearance, a written appearance and answer on behalf of the defendant. The court may, in its discretion, require the presence of the defendant at any stage of the proceeding not otherwise required by these rules.

The procedures for advising a defendant in a misdemeanor case of the defendant's rights are contained in M.C.R. 6(c):

At the first appearance of the defendant before the court on a uniform citation or sworn complaint, the court shall inform the defendant of [the defendant's] constitutional rights and the rights provided in the Idaho Criminal Rules, and these rules. Such advice of rights may be announced to all defendants at each session of court at the commencement of the court hearing, rather than advising each of the defendants individually when they come before the court.

M.C.R. 1 provides that the Idaho Criminal Rules "shall apply to the processing of misdemeanor complaints and citations to the extent they are not in conflict with these specific rules regarding the processing of misdemeanor charges." Therefore, except for the procedures contained in M.C.R. 6(c) and (d), I.C.R. 11(c) applies to the acceptance of misdemeanor pleas of guilty.

## A. THE 1987 CASE.

In the 1987 case, the transcript of the session of court where Maxey was arraigned indicates that pursuant to M.C.R. 6(c) the trial court advised all defendants present of the right against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses, as required by I.C.R. 11(c)(3). Before Maxey pleaded guilty, the trial court asked Maxey if he understood the rights which the trial court at the beginning of the session had advised all defendants they had. Maxey said he did. The trial court asked Maxey if he understood that by pleading guilty he would give up all his rights except his right to appeal his sentence. After a dialogue about other matters, the trial court asked Maxey if he still wished to plead guilty. Maxey said he did, and the trial court accepted Maxey's plea.

In Maxey's sentencing in the 1987 case, which took place in a separate proceeding seven days after Maxey's guilty plea, the trial court informed Maxey:

> Let me advise you of something else, though so you can beware of it. You get a second [DUI] now in the State of Idaho and you're looking at—I mean if it's within five years of the date of this one, you're looking at least ten days in jail, you could go for a year. You're looking at a fine of up to two thousand dollars, your driving privileges would have to be suspended for at least six months and could be for up to a year and a third such offense within five years is a felony and you could actually go to prison for it.

The day after this hearing, the clerk of court sent a "Quicki–Note" to Maxey indicating that Maxey had not signed a "Notification of Penalties Form" in court. The "Quicki–Note" asked for acknowledgement that the magistrate judge had notified Maxey of future penalties if he were convicted of DUI within five years. Maxey admits that he signed three copies of the notification of penalties form and sent them back to the court.

In 1987, I.C. § 18–8005(1)(c) provided that a person who pleaded guilty to or was found guilty of a DUI violation for the first time:

> Shall be advised by the court in writing at the time of sentencing of the penalties that will be imposed for second or subsequent [DUI] violations ..., which advice shall be signed by the defendant, ....

M.C.R. 9.1(c) also requires:

> [T]he court shall at or before the time of sentencing or granting a withheld judgment deliver to the defendant a written notice advising the defendant as to the penalties that may be imposed for subsequent [DUI] violations.... The notice shall be signed by the defendant and retained by the court, ....

■ Neither the statute nor the rule require this advice to be given before the court accepts a plea of guilty. Although the trial court did not strictly comply with the requirement for written notice of subsequent penalties signed by Maxey at or before sentencing, Maxey admitted he received, signed, and returned the written advice shortly after his sentencing, and certainly before any of his subsequent DUI violations that are at issue in this case. Therefore, we conclude that the error, defect, irregularity, or variance did not affect Maxey's substantial rights and should be disregarded as harmless. I.C.R. 52. As evidence of this, we note that at the sentencing hearing in the 1988 case, the following colloquy occurred:

> THE COURT: When you appeared here last year, 1987 on your last DWI and that was in what, in October?
>
> A: Yes, your Honor.
>
> THE COURT: The judge explained to you what the penalties were for future [DUI's], didn't they?
>
> A: Yeah.
>
> THE COURT: Do I need to go over it again?
>
> A: No.

■ We decline Maxey's invitation that we address the significance of the trial court's failure in the 1987 case to use a form in compliance with M.C.R. 5(f) because Maxey did not preserve this question for appeal in his conditional plea agreement.

■ We conclude that the record of the entire proceedings of the 1987 case, including

reasonable inferences drawn from this record, show that Maxey's guilty plea was made knowingly, intelligently, and voluntarily and that the trial court complied with the requirements of I.C.R. 11(c).

## B. THE 1989 CASE.

In the 1989 case, Maxey was awaiting a jury trial on a felony DUI, when the prosecutor and Maxey's attorney approached the trial court with a plea bargain by which Maxey would plead guilty to a misdemeanor DUI. Before accepting Maxey's plea, the trial court advised Maxey of his rights and asked Maxey if he was prepared to enter a plea to the misdemeanor charge. Maxey pleaded guilty.

In addition to Maxey's general assertions that his 1989 guilty plea was not knowing and intelligent, Maxey asserts that the trial court specifically did not inform him of: (1) his right to a jury trial, and (2) the consequences of his guilty plea with regard to future DUIs.

Concerning the lack of advice of the right to a jury trial, we acknowledge that at the plea hearing, the trial court informed Maxey: "You have a right to go to trial." Although the trial court did not inform Maxey of a right to a "jury trial," we cannot ignore that this advice came at a time when Maxey was scheduled for a jury trial on the felony DUI charge that was reduced to a misdemeanor by the plea bargain. In this context, it is disingenuous for Maxey to contend that he did not understand that he had a right to a jury trial when he pleaded guilty to the misdemeanor DUI.

At the sentencing hearing in the 1989 case the trial court informed Maxey as follows:

THE COURT: Do we have those advice—advice of future penalties forms?

Well, I suppose I can go ahead before those forms come back. I'll accept this plea agreement.

Thanks. Thank you.

Sign it.

Mr. Maxey, it's my duty to inform you that you have been—you have just pled guilty to an enhanced DUI, that you did previously—

MR. CLARK: Judge. That's unenhanced.

THE COURT: Unenhanced DUI, and the maximum possible penalty for that you know.

A second DUI violation within five years including withheld judgments is a misdemeanor, and for a second DUI within five years you can be sentenced to jail for at least—you will be sentenced to jail for at least ten days and can be sentenced for up to one year in jail. You could be fined up to two thousand dollars for an enhanced DUI and you shall have your driving privileges suspended for at least six months but not more than one year following your release from jail.

A third DUI violation within five years including withheld judgments is a felony and you shall in that situation be sentenced to the custody of the Idaho State Board of Corrections for not more than five years, but if the court imposes a jail sentence instead of the state penitentiary it shall be for a minimum period of not less than thirty days, and also you may be fined up to five thousand dollars and you shall have your driving privileges suspended for at least one year and not more than five years after release from imprisonment.

So you should be aware of those future penalties. And I'm going to ask you to sign this form which contains those penalties that I've just read to you.

We'll just leave those at the clerk's desk and perhaps if you'd step over there after sentencing and sign that form, we'll take care of it in that way.

This satisfied the requirements for written advice of subsequent DUI penalties as specified in M.C.R. 9.1(c).

We conclude that the record of the entire proceedings of the 1989 case, including reasonable inferences drawn from this record, show that Maxey's guilty plea was made knowingly, intelligently, and voluntarily and that the trial court complied with the requirements of I.C.R. 11(c).

## IV.

## CONCLUSION.

We affirm the trial court's denial of Maxey's motions in limine and to dismiss.

McDEVITT, C.J. and HART, J. Pro Tem concur.

FULLER, Justice Pro Tem, dissents.

I concur with the majority opinion as to the 1989 DUI conviction but dissent as to the 1987 DUI conviction.

In my view, the majority opinion should have addressed the more intricate questions concerning Maxey's right to private counsel and *waiver* of that right under the United States Constitution.

In *State v. Jennings,* 122 Idaho 531, 533, 835 P.2d 1342 (Ct.App.1992), the court of appeals did address these questions, but concluded from the record defendant had waived his right to retained counsel in a prior DUI misdemeanor case. This court denied a petition for review. The view adopted in *Jennings* should be re-examined, because it presumed a defendant waived the right to private counsel based on defendant's knowledge of his rights, his failure to claim he wanted to be represented, and a silent record that shows no express waiver.

The *Jennings* view of "presumed waiver" is inconsistent with well established constitutional principles. "A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary." *Rice v. Olson,* 324 U.S. 786, 788, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945). "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). While these cases deal with court appointed counsel, the principles should apply equally to a waiver of private counsel.

I.C.R. Rule 10(b), which relates to felony cases, provides:

No proceedings may take place prior to the appointment of counsel or until the defendant has had a reasonable period of time to obtain counsel, *or unless the defendant waives the right to counsel.* (Emphasis added.)

This rule applies to misdemeanor cases to the extent it is not in conflict with specific rules regarding the processing of misdemeanor charges. M.C.R. Rule 1. Maxey was also entitled to be advised of the procedural rights provided in the Idaho Criminal Rules. See M.C.R. Rule 6(c). The *Jennings* view that presumes a waiver is inconsistent with these procedural rights.

Like *Jennings,* the transcript in this case shows the magistrate failed to obtain an express waiver of Maxey's right to private counsel in the 1987 proceedings. The transcript shows:

THE COURT: Do you give up your right to have a public defender this morning, Mr. Maxey?

A. Yes.

THE COURT: Okay. I'll note that waiver in your file then. You can hire a lawyer to represent yourself, whatever you'd like to do, okay?

(T. p. 14, ls. 9–15.)

The magistrate's clear message to Maxey is that he still had a right to private counsel. The absence of legal counsel's guiding hand to assist Maxey is shown by a later exchange between Maxey and the magistrate:

THE COURT: Okay. Do you understand that your giving up all your rights except your right to appeal your sentence if you're not happy with it. And you understand if you have any defenses to DWI you're giving those up today, also?

A. What's that mean?

THE COURT: Well, I'm not allowed to go through police reports before I come in here so I don't know—

A. Oh.

THE COURT: Anything about your case.

A. Oh. (T. p. 16, ls. 9–20)

In my view, the magistrate did not comply with the recognized standards for waiver of Sixth Amendment right to counsel as dis-

cussed in *Van Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); and *Ebersole v. State*, 91 Idaho 630, 428 P.2d 947 (1967). *Van Moltke* sets forth the standard in the following terms:

> "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. *The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.* To be valid such waiver must be made with an *apprehension* of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments* thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

332 U.S. at 723, 68 S.Ct. at 323, 92 L.Ed. at 320 (citations omitted) (emphasis added).

The "colloquy" in this case, where the defendant merely responded "yes" to the magistrate's question of whether he gave up his right to "have a public defender this morning", is precisely the type of bare-bones waiver that *Van Moltke* cautioned against so long ago. That colloquy is insufficient to meet the state's burden of showing that the waiver was knowing and voluntary. *State v. Wuthrich*, 112 Idaho 360, 732 P.2d 329 (Ct.App. 1986).

Two critical components are entirely lacking from the 1987 waiver: (1) a knowing waiver of the right to private, retained counsel; and (2) warnings that would impart an "apprehension" of allowable enhanced punishments that might accrue in the future.

In my view, when in 1987 the magistrate obtained Maxey's plea of guilty without an express waiver of his right to private counsel, it was an uncounseled plea to a misdemeanor offense which might be used later to enhance an offense to a felony. Such a plea is not valid for all purposes and constitutes a violation of the Sixth Amendment to the United States Constitution because it could be used to impose an increased term of imprisonment upon a subsequent conviction. See: *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); *U.S. v. Brady*, 928 F.2d 844 (9th Cir.1991).

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

Although I concur in the partial dissent of Fuller, J. Pro Tem, I write separately to dissent on additional grounds with regard to the 1987 conviction because I believe that the majority should have recognized the violation of Maxey's statutory rights. As Judge Fuller points out in his persuasive dissent, the majority opinion ignores the more complicated constitutional questions of waiver of counsel for the 1987 conviction. The basis upon which the majority purports to duck these questions is its conclusion that the sufficiency of the waiver of Maxey's right to counsel in the 1987 case is measured not by statute or the state or federal constitutions, but rather merely by I.C.M.R. 6(c). This would be an entirely acceptable approach if the majority then proceeded to hold that there was an insufficient record to establish a waiver of the right to counsel. We have previously held that constitutional questions ought not be addressed when doing so is inessential to proper resolution of the case. *See Sullivan v. Sullivan*, 102 Idaho 737, 739 n. 5, 639 P.2d 435, 437 n. 5 (1981). However, the converse of that proposition can never be correct in a system of constitutional jurisprudence; in the absence of a violation of statute or rule a court always must address a properly presented allegation of a constitutional violation. Because Judge Fuller's opinion sufficiently addresses the question of whether Maxey's guilty plea in the 1987 case was taken without a constitutionally sufficient record to support a finding of a waiver of his right to

counsel, I concur in his dissent without writing additionally on that point.

Maxey's 1987 plea was taken in clear violation of I.C. § 19–857. That statute prohibits a court from accepting a defendant's waiver of the right to counsel unless it is done "in writing, or by other record." Even then, the waiver must be supported by "find[ings] of record that [the defendant] has acted with full awareness of [the defendant's] rights and of the consequences of a waiver."

In 1987, along with all other defendants present for the trial court's initial mass advisement, Maxey was told by the court the following: "You have a right to engage counsel, that's a right to hire a lawyer and have that lawyer speak for you and represent you in all stages of these proceedings." Later, when tendering his plea of guilty, the following exchange took place between Maxey and the court:

COURT: Do you wish to fill out an application for a court-appointed lawyer to represent you in this?

MAXEY: No.

COURT: Do you give up your right to have a public defender this morning, Mr. Maxey?

MAXEY: Yes.

COURT: Okay. I'll note that waiver in your file then. You can hire a lawyer to represent yourself, whatever you'd like to do, okay?

MAXEY: Yeah.

The Court then twice inquired if Maxey had any questions about his rights:

COURT: Okay. Do you understand all of your rights that I went through at the beginning of court this morning?

MAXEY: I think so, yeah.

COURT: Okay. Well, Mr. Maxey, if you have any questions for me about your rights or what you are charged with or anything up this point in time that I've explained about DWI's that you don't understand?

Maxey asked the Court why his bond was so high, the court explained, and then the following exchange took place:

COURT: Well, any other questions other than why your bond was so high? All right. Mr. Maxey, let's go back to the citation. Then I have a citation from the eleventh of October alleging operating a motor vehicle under the influence. To that charge how do you wish to plead today, guilty or not guilty?

MAXEY: Guilty.

COURT: Okay. Do you understand that you're giving up all of your rights except your right to appeal your sentence if you're not happy with it. And you understand if you have any defense to DWI you're giving those up today, also?

MAXEY: What's that mean?

COURT: Well, I'm not allowed to go through the police reports before I come in here so I don't know—

MAXEY: Oh.

COURT: Anything about your case.

The absence of any particularized findings is a clear violation of I.C. § 19–857. Then-Judge, now Justice, Silak wrote for a unanimous Court of Appeals which recognized this and reversed the trial court's decision permitting enhancement based on its examination of the above record from the 1987 conviction:

This is the only dialogue between the magistrate and Maxey concerning Maxey's waiver of counsel. Under I.C. § 19–857, before Maxey could waive his right to court appointed counsel[1] the court was

---

1. While I agree with the Court of Appeals decision that the findings were insufficient on the question of court-appointed counsel, the magistrate did at least ask Maxey about waiving his right to a public defender. The magistrate completely forgot to ask Maxey whether or not he was waiving his right to retain private counsel.

I believe I.C. § 19–857 obligates a court to make sufficient findings with regard to waiver of both appointed *and* retained counsel because I.C.

§ 19–852(a)(1) and I.C. § 19–853(a)(1) both require that the defendant be advised of the right to retain counsel and the right to have appointed counsel. Both of those sections are within the "act" of which I.C. § 19–857 speaks in requiring findings of waiver.

The right to private counsel is separate from the right to court-appointed counsel. Even where there is a clear waiver, which is supported by findings, by a defendant of the right to a

required to find of record that he was acting with full awareness of his rights and of the consequences of a waiver. In making this finding it was incumbent upon the court to consider such factors as Maxey's age, education, and familiarity with the English language and the complexity of the crime involved. The above quoted dialogue clearly shows that the magistrate failed to inquire of Maxey concerning any of the factors enumerated by the statute— or any other factors—to determine whether Maxey was acting with full awareness of his rights and the consequences of his waiver.

*State v. Maxey,* 125 Idaho 516, 518, 873 P.2d 161, 164 (Ct.App.1993).

Despite the clear requirement for such a finding in I.C. § 19–857, the majority concludes that it is free to ignore that statute under authority of I.C.R. 11(c). The majority explains that the statute and the rule conflict, and then decides that, because I.C. § 19–857 is a "procedural" statute, I.C.R. 11(c) takes precedence over it. What is the conflict? The majority does not say. There is no language in I.C.R. 11(c) whatsoever dealing with the defendant's *waiver* of the right to counsel. Even the requirement that the defendant be *advised* of three other rights in I.C.R. 11(c)(3) does not discuss the sufficiency of findings that must be made to establish a waiver after the advisement. I simply do not understand how the majority can hold that a statute that describes a specific proceeding for waiver of the right to counsel conflicts with a rule which describes an advisement procedure without ever mentioning the right to counsel.

All of the cases that the majority points to in support of its reasoning involved genuine

conflicts between a statute and a rule. *State v. Harbaugh,* 123 Idaho 835, 853 P.2d 580 (1993), presented a real conflict between the statute providing for dismissal of a criminal action by a court without notice to the parties and I.C.R. 48's requirement of notice to the parties when the court was taking such action on its own initiative. *Id.,* 123 Idaho at 837 n. 3, 853 P.2d at 582 n. 3. Likewise, in *State v. Currington,* 108 Idaho 539, 700 P.2d 942 (1985), although I may have disagreed with the majority as to whether the statute at issue was substantive or procedural, even then I did not deny that there truly was a conflict between the statute prohibiting, and the rule providing for, post-conviction bail. *Id.,* 108 Idaho at 541–42, 700 P.2d at 944–46 (Bistline, J. dissenting). Finally, *State v. Yoder,* 96 Idaho 651, 534 P.2d 771 (1975), involved a clear conflict between a rule allowing for recorded testimony in support of a search warrant and a statute mandating that only written affidavits be used. *Id.,* 96 Idaho at 654, 534 P.2d at 774.

Faced with a clear statutory violation previously recognized by the Court of Appeals, the majority in this case manufactures a conflict between an on-point statute and an inapplicable rule in order to reach the desired outcome and thus hide from its duty to conduct a principled analysis. Because I am unwilling to participate in such an abrogation of responsibility, I respectfully dissent.

public defender, there still must be a separate waiver, also supported by findings, of the right to private counsel. Only then can it be said that a defendant has fully waived the right to counsel.

There are several reasons why the waiver of private counsel cannot be said to be necessarily included in the waiver of court appointed counsel. Some defendants view with suspicion the appointment of counsel whose salary is paid by the same government that is prosecuting them. Other defendants may resist a public defender based on a belief that their cases will not receive

the individual attention they desire due to the public defenders' caseloads. Even defendants who cannot afford to pay for counsel may hope that a private attorney will represent them pro bono. While I have the highest admiration for the public defenders of Idaho and feel such concerns are entirely unjustified, the possibility of such reservations demonstrates why a separate waiver of the right to retain private counsel is required even where there is a clear waiver of the right to a public defender.